UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff(s),        CASE NUMBER: 09-20224
                                      HONORABLE VICTORIA A. ROBERTS

v.

ERNEST ADAMS,
KATRINA LYONS,

          Defendant(s).
_____/

ORDER

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This matter is before the Court on Defendant Katrina Lyons' "Motion to Suppress." (Doc. #114). Lyons asks the Court to suppress the primary and derivative evidence seized from a traffic stop on September 25, 2008. Co-Defendant Ernest Adams joins.

On November 18, 2009, the Court referred this motion to Magistrate Judge Virginia A. Morgan for a Report and Recommendation ("R&R"). The Magistrate Judge held an evidentiary hearing on January 11, 2010 and January 12, 2010. On February 22, 2010, the Magistrate Judge filed an R&R, recommending that the Court DENY Lyons' motion to suppress.

Lyons filed objections on March 4, 2010 and a Supplemental Brief on July 23, 2010. The Government did not respond.

For the reasons stated, the Court **DECLINES TO ADOPT** the Magistrate Judge's

1

R&R, and Lyons' motion is **GRANTED**.

## II. BACKGROUND

### A. Drug Enforcement Administration Investigation

Special Agent Kevin Graber of the Drug Enforcement Administration ("DEA") was involved with an investigation of co-Defendant George Williams. The investigation included a wiretap on co-Defendant Yolanda Young's cell phone. The wiretap investigation started in August 2008.

#### 1. Traffic Stops Related to the Investigation

In June 2007, the Wood County Sheriff's Department in Ohio effectuated a traffic stop of a car with a Kentucky license plate. A search of the car resulted in the seizure of 61 bottles of cough syrup with codeine. The prescribing physician was Dr. Milagros Ebreo, the doctor associated with the investigation.

In April 2008, an individual associated with Williams was stopped in Kentucky. A search of the car resulted in the seizure of cough syrup with codeine, OxyContin pills, and Xanax.

A third traffic stop was conducted on July 3, 2008. A car was pulled over in Monroe County, Michigan. A search of the car resulted in the seizure of OxyContin pills and cough syrup with codeine. The cough syrup was linked to this investigation through Dr. Ebreo.

#### 2. General Surveillance on 20226 Stratford

While conducting surveillance on 20226 Stratford, SA Graber learned that elderly people saw a doctor at that location. The patients were prescribed Xanax, OxyContin

pills, and cough syrup with codeine, but they never received the prescriptions; either Williams or one of his subordinates filled the prescriptions and distributed the products to individuals involved in the conspiracy.

SA Graber never observed a car with an out-of-state license plate at the Stratford location, nor was the Stratford location the place that was used to store controlled substances for distribution.

### 3. Surveillance on 20226 Stratford on September 25, 2008

At approximately 2:50 p.m. on September 25, 2008, SA Graber established surveillance at the Stratford location. Shortly after the surveillance was established, Williams and Young left the house.

At approximately 3:07 p.m., Graber received information from agents monitoring the wiretap that Young called Williams to find out if he was waiting on someone to arrive, because Young told a woman to park in the driveway at 20226 Stratford. Williams told Young he was waiting on a female in a gray car with an out-of-state license plate. SA Graber then observed a gray minivan with an Alabama license plate pull into the driveway of the house.

At approximately 3:12 p.m., a Mercedes associated with Williams pulled behind the minivan in the driveway. Lyons was driving the minivan. She pulled the minivan further up the driveway, and the Mercedes followed. Both cars were out of SA Graber's sight.

SA Graber did not see anyone with a package, but he believed Lyons and Williams loaded controlled substances into the gray minivan.

At approximately 4:14 p.m., Lyons and Williams left the Stratford location.

3

SA Graber believed he had probable cause to effectuate a traffic stop on the minivan, based on: (1) the traffic stops in June 2007, April 2008, and July 3, 2008; (2) the fact that the minivan and the Mercedes parked so they were out of sight; and, (3) his knowledge of the conversations that occurred over the wiretap.

Nonetheless, SA Graber wanted the Michigan State Police to stop the minivan so the DEA's investigation would not be compromised. SA Graber says he told the police officers why the DEA believed there would be narcotics in the minivan, but asked the officers to develop their own probable cause to stop the minivan.

### B.    Traffic Stop on September 25, 2008

Trooper James Grubbs and Trooper Marcus Wise of the Michigan State Police effectuated a traffic stop at approximately 4:20 p.m. on September 25, 2008. According to both Trooper Grubbs and Trooper Wise, the reason for the traffic stop was that Lyons had objects hanging from the rear-view mirror of the minivan, in violation of Michigan law.

The Incident Report from the Michigan Department of State Police says Lyons was stopped for a vision obstruction.

Trooper Wise approached Lyons. He smelled moth balls, Lyons' hands were shaking, and she had labored breathing. Lyons presented an Alabama identification card and a rental agreement for the minivan.

Trooper Wise asked Lyons for permission to search the minivan. Lyons responded, "go ahead." Lyons took her purse with her when she got out of the minivan.

Trooper Wise asked Lyons if he could search her purse for his safety. He found a Michigan driver's license and several bundles of United States currency. It was

4

discovered that her driver's license was suspended.

Lyons said she earned the money doing hair, and that she had receipts to prove she withdrew the money from her bank account; there were no withdrawal receipts in Lyons' purse.

When Trooper Wise told Lyons her statements were inconsistent, Lyons said she got the money from a male friend.

Lyons was arrested for driving on a suspended license.

Trooper Grubbs searched the minivan. He found $11,293.00 in United States currency, and 39 bottles of Promethazine with Codeine cough syrup.

Lyons was arrested and taken to the Michigan State Police post. She was released from police custody at approximately 9:00 p.m.

### C. Magistrate Judge's Findings and Lyons' Objections

Lyons seeks to suppress the evidence that was seized on September 25, 2008 as well as the evidence that was obtained as a result of the unlawful traffic stop. She argues that: (1) the traffic stop was improper; (2) the detention after the initial stop was without legal justification; and (3) she made statements without *Miranda* warnings.

The Magistrate Judge says there is a question regarding whether there was a civil infraction, but the traffic stop was lawful based on *Terry v. Ohio*, 392 U.S. 1 (1968); or, the automobile exception.

Lyons objects to the these findings. She says: (1) SA Graber did not have probable cause to believe the minivan contained contraband; (2) the Magistrate Judge's reliance on the collective knowledge doctrine to justify the traffic stop, is an error of fact and law because the troopers did not rely on that doctrine; and (3) her consent to

search the minivan was invalid.

## III. APPLICABLE LAW AND ANALYSIS

The testimony at the evidentiary hearing and the Incident Report from the Michigan State Police support the conclusion that the traffic stop was based solely on an alleged civil infraction. There is no evidence in the record that the minivan was stopped based on the DEA's investigation and collective knowledge.

The Court rejects the Government's argument that Trooper Grubbs and Trooper Wise had reasonable suspicion to effectuate the traffic stop of the minivan based on the information known to the DEA.

The only remaining question is whether the traffic stop was justified based on objects hanging from Lyons' rear-view mirror.

"[S]topping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of [the Fourth Amendment]." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

Trooper Grubbs and Trooper Wise's decision to conduct a traffic stop is reasonable, and complies with the Fourth Amendment guarantee against "unreasonable" searches and seizures, if they had probable cause to believe Lyons committed a civil infraction. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (citing *Prouse,* 440 U.S. at 659 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (*per curiam*)). Probable cause means "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

      MCLA §257.709 says:

      (1)(c)  A person shall not drive a motor vehicle with . . . [a] dangling ornament or other suspended object that obstructs the vision of the driver of the vehicle, except as authorized by law.

That statute goes on to say, however:

      (3)(d)  This section does not apply to[] [a] vehicle registered in another state, territory, commonwealth of the United States, or another county or province.

Trooper Wise testified that he was right behind the minivan when he saw the dangling objects. This necessarily means that he saw that the minivan was registered in Alabama. Therefore, Lyons could not be guilty of violating MCLA §257.709, by operation of law.

In addition, there is no evidence that the air freshener and beads hanging from the rear-view mirror obstructed Lyons' vision.

The Court finds the troopers lacked probable cause to conduct a traffic stop.

## IV.  CONCLUSION

The Court **DECLINES TO ADOPT** the Magistrate Judge's R&R. Lyons' motion is **GRANTED**.

**IT IS ORDERED**.

                                                s/Victoria A. Roberts
                                               Victoria A. Roberts
                                               United States District Judge

Dated: August 31, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 31, 2010.

s/Carol A. Pinegar
Deputy Clerk